IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SHANAE WATKINS**, <br> 1044 Radnor Avenue <br> Baltimore, Maryland 21212 <br><br> *Plaintiff*, <br><br> v. <br><br> **MAYOR AND CITY COUNCIL OF BALTIMORE CITY** <br> Serve: James L. Shea, Esq. <br> *City Solicitor* <br> City Hall - Room 250 <br> 100 North Holliday Street <br> Baltimore, Maryland 21202 <br><br> and, <br><br> **BALTIMORE CITY COMMUNITY ACTION PARTNERSHIP** <br> Serve: Angela Whitaker <br> *Director* <br> 1731 East Chase Street <br> Baltimore, MD 21213 <br><br> and, <br><br> **GARY SMITH** <br> *Individually and in his official capacity as an employee of the Baltimore City Community Action Partnership* <br> 1731 East Chase Street <br> Baltimore, MD 21213 <br><br> *Defendants*. | Case No.: _____ <br><br> *JURY TRIAL DEMANDED* |

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, by and through undersigned counsel, before this Honorable court and sues the above-named defendants and in support thereof states the following:

1

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Honorable Court under 28 U.S.C. § 1331 as a civil action arising under the constitution, laws, or treaties of the United States.

2. Venue is proper in this Honorable Court under 28 U.S.C. § 1391 since the parties are domiciled in the State of Maryland, or organized under Maryland law, and all material events took place in Baltimore, Maryland.

3. Plaintiff submitted her claim to the Treasurer or a designee of the Treasurer on or about July 25, 2019 via courier and certified mail within one year of the date of injury that is the basis of this claim as required by Md. Code, State Gov't §§ 12-106(b) and 12-107. Plaintiff's claim was denied by the Treasurer on July 31, 2019.

## PARTIES

4. Ms. Watkins is an adult resident of the State of Maryland residing at 1044 Radnor Avenue, Baltimore, Maryland 21212.

5. Defendant Mayor and City Council of Baltimore City, acting through the Baltimore Community Action Partnership, is a *sui juris* municipal entity in Baltimore, Maryland, headquartered at City Hall – Room 250, 100 North Holliday Street, Baltimore, Maryland 21202.

6. Defendant Baltimore City Community Action Partnership is a *sui juris* entity acting under the Mayor's Office of Children and Family Success.

7. Defendant Gary Smith is, upon information and belief, an adult resident of the state of Maryland. At all times relevant to the incident complained of herein, Defendant Smith was employed by the City of Baltimore as an employee of the Baltimore City Community Action Partnership, and at all times relevant hereto was acting in his individual capacity and/or in his official capacity as an employee of the Baltimore City Community Action Partnership.

8. In accordance with Md. Code, State Gov't §12-108, this complaint and accompanying documents are served on the above-listed Defendants and the Maryland State Treasurer.

**FACTS**

9. The Maryland Community Action Partnership Program is a local agency that is federally funded by the Department of Health and Human Services' Community Services Block Grant ("CSBG") under 42 U.S.C. 9918. The Baltimore City Community Action Partnership Center is a subsidiary of the Maryland Community Action Partnership Program.

10. On or about July 31, 2018, Ms. Watkins went to the Baltimore City Community Action Partnership Center ("BCCAPC") located at 3411 Bank Street, Baltimore, Maryland 21224, with the intention of applying for energy assistance from Baltimore Gas and Electric Company ("BGE") after her service was interrupted.

11. After arriving at the BCCAPC, Ms. Watkins and another woman were asked to go to the back of the building where they would be further assisted by Mr. Gary Smith to fill out energy assistance applications.

12. Once Ms. Watkins reached the back of the building, she began to feel uncomfortable as Mr. Smith stood over her, watching her fill out the forms. Mr. Smith then asked Ms. Watkins to enter his office and informed her that he wanted to ensure all of her paperwork was correct. Ms. Watkins engaged in small talk with Mr. Smith as they walked to his dimly lit office.

13. Mr. Smith began asking Ms. Watkins inappropriate questions as they entered his office, including whether she was still romantically involved with a previous partner. Ms. Watkins responded in the negative, indicating that she no longer dated men.

14. Mr. Smith then began to intrusively question Ms. Watkins about her weight, stating that it looked as if she had lost weight since he saw her last. Ms. Watkins confirmed this in an attempt to be polite, after which Mr. Smith began to question her about her diet and asked her to stand up and turn around so that he could inspect her weight loss progress.

15. Ms. Watkins complied with Mr. Smith's request, at which point he struck her on her buttocks and stated "your butt is getting smaller."

16. Ms. Watkins promptly sat back down, clearly uncomfortable with the direction that the conversation had taken and paralyzed with fear at the thought of what Mr. Smith might do next. Mr. Smith persisted with his outrageous behavior by making suggestive comments and stating that he had female friends who were lesbians but were interested in sleeping with him. He repeatedly asked Ms. Watkins to explain why these female friends would behave this way despite their orientation.

17. Fearful that she would not receive the energy assistance that she desperately needed, Ms. Watkins attempted to reply with short but polite answers, hoping that Mr. Smith would cease his line of irrelevant and inappropriate questioning and return to filing her application.

18. Instead, Mr. Smith continued to discuss his preference for women until a maintenance staff member entered the office. Mr. Smith and the maintenance staff member joked and laughed together while Ms. Watkins remained seated, waiting to receive the help she had come to the BCCAPC for. Once the maintenance staff member left the office, Mr. Smith continued his lewd comments toward Ms. Watkins.

19. Eventually, Mr. Smith asked Ms. Watkins whether BGE had given her notice that her energy service would be interrupted, to which Ms. Watkins replied that she had not and was unaware that the cutoff date was scheduled for the following day.

20. Mr. Smith informed Ms. Watkins that she would not get much financial assistance for her energy bill, but that he would add to the overall amount. Ms. Watkins was then sent to another employee, Ms. Kimberly Whitaker, to finish processing her application.

21. During her conversation with Ms. Whitaker, Ms. Watkins requested to meet with a supervisor, intending to make a complaint. She was told that none of the supervisors were available at that time. She did not feel comfortable making a complaint to anyone aside from a supervisor, fearful that Mr. Smith would find out and retaliate.

22. With further conversation regarding the application, Ms. Watkins began to cautiously reveal information to the employee and asked whether a supervisor could be informed about the incident. The employee assured Ms. Watkins that she would pass the information along to a supervisor.

23. Ms. Watkins reported the incident to the police and was contacted about the matter by then-Human Services Manager of the BCCAPC, Adongo Tia-Okwee Matthews.[1] Ms. Watkins has not received an update from BCCAPC on this matter since providing Ms. Matthews with ample information to support an investigation against Mr. Smith.

24. Following the harassment, Ms. Watkins experienced severe mental anguish and scheduled an emergency appointment with her therapist.

25. This is not the first instance where Mr. Smith has engaged in lascivious conduct such as this. Ms. Watkins came to know of other instances where Mr. Smith had harassed female

---

[1] Ms. Matthews has since left her position as Human Services Manager at the Community Action Partnership as of December 2019.

5

applicants at the BCCAPC after leaving Mr. Smith's office when she made a Facebook post about the incident and other women responded, saying that they had experienced similar treatment from Mr. Smith.

26. Therefore, Baltimore City is vicariously liable for the violations committed by its officers and for this pattern and practice of unlawful misconduct, which the City knows or should know is taking place.

## COUNT I
## COMMUNITY SERVICES BLOCK GRANT PROGRAM 42 U.S.C. § 9918(c)(1)
## SEX-BASED DISCRIMINATION CLAIM
*Against all Defendants*

27. Every paragraph not falling under this count is incorporated herein by reference.

28. It is unlawful for any person in the United States to prevent another individual from participating in or benefitting from any program or activity receiving federal financial assistance under the Community Services Block Grant program or to subject an individual to discrimination on the ground of race, color, or national origin or sex under any such program. *See* 42 U.S.C. § 9918(c)(1).

29. By definition, Plaintiff is an individual who attempted to participate in and benefit from the BCCAPC's Energy Assistance Program but was discriminated against on the basis of sex when she was sexually harassed by BCCAPC employee Gary Smith.

30. The Plaintiff was singled out for harassment by the Defendants based on her sex. Similarly situated males suffered no similar harassment.

31. The harassment at issue interferes with Plaintiff's right to be free from discrimination in applying to receive federal assistance.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT II
## CIVIL RIGHTS ACT 42 U.S.C. § 1983
## SEX-BASED DISCRIMINATION CLAIM
*Against all Defendants*

32. Every paragraph not falling under this count is incorporated herein by reference.

33. It is unlawful for any person in the United States to deprive another individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

34. 42 U.S.C. § 9918(c)(1) is a United States law that prohibits discrimination against individuals participating in federally-funded programs. This includes sex-based discrimination.

35. The harassment at issue interferes with Plaintiff's right to be free from sex-based discrimination in applying to receive federal assistance from a federally-funded program.

36. Defendant Gary Smith deprived Plaintiff of her rights under 42 U.S.C. § 9918 by subjecting her to sex-based discrimination during her participation in a federally-funded program in contravention of 42 U.S.C. § 1983.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT III
## CIVIL RIGHTS ACT 42 U.S.C. § 1983
## EQUAL PROTECTION CLAIM
*Against all Defendants*

37. Every paragraph not falling under this count is incorporated herein by reference.

38. The female Plaintiff was treated differently than her similarly-situated male counterparts, based solely on her sex.

39. The Plaintiff was singled out for harassment by the Defendants based on her sex. Similarly situated males suffered no similar harassment.

40. There is not a rational basis, legitimate state purpose, or compelling governmental interest in the harassment and discrimination

41. Because Plaintiff was intentionally singled out on the basis of her sex, she is a member of a suspect classification and the harassment described herein must be evaluated under strict scrutiny.

42. The harassment at issue interferes with Plaintiff's right to be free from discrimination in applying to receive federal assistance.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT IV
### CIVIL RIGHTS ACT 42 U.S.C. § 1983
### DUE PROCESS CLAIM
*Against all Defendants*

43. Every paragraph not falling under this count is incorporated herein by reference.

44. Defendant City of Baltimore was, at all relevant times, acting "under color of law," pursuant to Baltimore City's charter, codes, ordinances, and regulations, the laws of the State of Maryland, and the Constitution of the United States.

45. Plaintiff was deprived of her Constitutional rights as well as her rights described above under the Civil Rights Act, a federal statute.

46. With respect to the United States Constitution, Plaintiff was denied the right to due process of law insofar as the Baltimore City Community Action Partnership Center, a government agency, hired and continued to employ a known sexual harasser to act as an agent of the government.

47. Plaintiff has a liberty interest in the right to be secure in her person. This interest was violated when Mr. Smith threatened her physical safety and security by intentionally causing a harmful and unwelcome contact to occur when he struck her buttocks in his office and made lewd comments, creating a hostile environment through excessive sexual harassment.

48. There are no adequate procedural safeguards in place to prevent this abuse.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT V
## MARYLAND DECLARATION OF RIGHTS ARTICLES 24 & 26
## EQUAL PROTECTION CLAIM
*Against all Defendants*

49. Plaintiff is entitled to equal protection of law pursuant to Article 24 and Article 26 of the Maryland Declaration of Rights, which prohibit sex-based discrimination.

50. Plaintiff, a female applicant for federally-funded assistance, was treated differently than her similarly-situated male counterparts, based on her sex and sexual orientation.

51. The sexual harassment suffered by Plaintiff included, but was not limited to, lewd comments from Mr. Gary Smith, an employee of the Baltimore City Community Action Partnership Center—a program controlled by the Mayor's Office of Children and Family Success.

52. Upon information and belief, Mr. Smith did not make sexually-explicit comments or comments on body weight to any male applicants for federally-funded assistance.

53. There is no rational basis, legitimate state purpose, or important governmental interest in the sexual harassment at issue.

54. As a result of Defendant's conduct, Plaintiff suffered, and continued to suffered severe mental anguish in addition to financial and economic damages.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT VI
## MARYLAND DECLARATION OF RIGHTS ARTICLES 24 & 26
## DUE PROCESS CLAIM
*Against all Defendants*

55. Every paragraph not falling under this count is incorporated herein by reference.

56. Plaintiff is entitled to due process of law pursuant to Article 24 and Article 26 of the Maryland Declaration of Rights, which prohibit sex-based discrimination.

57. Defendant City of Baltimore was, at all relevant times, acting "under color of law," pursuant to Baltimore City's charter, codes, ordinances, and regulations, the laws of the State of Maryland, and the Constitution of the United States.

58. Plaintiff was deprived of her substantive and procedural due process rights under the Maryland Constitution.

59. With respect to the Maryland Constitution, the Plaintiff was denied the right to due process of law insofar as the Baltimore City Community Action Partnership Center, a government agency, hired and continued to employ a known sexual harasser to act as an agent of the government.

60. Plaintiff has a liberty interest in the right to be secure in her person. This interest was violated when Mr. Smith threatened her physical safety and security by intentionally causing a harmful and unwelcome contact to occur when he struck her buttocks in his office and made lewd comments, creating a hostile environment through excessive sexual harassment.

61. There are no adequate procedural safeguards in place to prevent this abuse.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT VII
**NEGLIGENCE**
*Against all Defendants*

62. Every paragraph not falling under this count is incorporated herein by reference.

63. The Defendants owed Plaintiff a duty of care to comply with legal prohibitions on discrimination.

64. The Defendants breached that duty of care by engaging in sex-based discrimination against Plaintiff.

65. Plaintiff suffered damages as a direct result of the individual Defendants' breach of their duty of care.

66. As a direct and proximate result of the aforesaid negligent conduct, actions and inactions of Defendants stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer severe mental anguish and suffering, in addition to financial and economic injury.

67. Plaintiff is entitled to compensatory and punitive damages and attorneys' fees and costs.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT VIII
### NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION
*Against Defendants City of Baltimore and Baltimore Community Action Partnership Program*

68. Every paragraph not falling under this count is incorporated herein by reference

69. At all times relevant hereto, Mr. Smith was an employee of the Baltimore City Community Action Partnership Center, a government agency under the City of Baltimore's control.

70. Defendant Baltimore City bears direct responsibility for the hiring, retention, and supervision of municipal employees and owes a duty to the citizens of Baltimore city to ensure the safety, health, and welfare of applicants for federally-funded assistance.

71. Defendant Baltimore City knew or should have known, prior to hiring Mr. Smith, that he was unfit and incompetent for the duties of his job and dangerous to Plaintiff and other female applicants for federally-funded assistance.

72. Defendant Baltimore City was negligent in failing to exercise its duty to provide any training sufficient to prevent the sex-based discrimination, sexual harassment, and other misconduct outlined herein.

73. Defendant Baltimore City was negligent in failing to exercise its duty to properly supervise employees at the Baltimore City Community Action Partnership Center so as to prevent the discrimination and other misconduct outlined herein.

74. Mr. Smith's actions as an employee of the Baltimore City Community Action Partnership Center were the actual and proximate cause of Ms. Watkins's injuries.

75. Defendant Baltimore City knew or should have known of this and other instances of Mr. Smith's conduct similar to that outlined herein. Ms. Watkins complained to a supervisor at the Baltimore City Community Action Partnership Center and followed up. The City did not properly investigate Mr. Smith's conduct or provide Ms. Watkins with an update on the status of the matter. The City violated its duty by failing to discipline or terminate Mr. Smith.

76. Upon information and belief, Mr. Smith has been reported for sexual harassment and/or sex-based discrimination on other occasions by female participants at the Community Action Partnership Program. At least some of these complaints took place before the harassment in the instant case occurred. The City of Baltimore was therefore aware of past instances where Mr. Smith harassed female individuals at the BCCAPC and should have known that this behavior would persist if the City did not take action.

77. As a result of Defendant Baltimore City's breach of its duty to use proper care in selecting, supervising and retaining Mr. Smith as an employee, Plaintiff suffered, and continued to suffered severe mental anguish in addition to financial and economic damages.

78. But for Defendant Baltimore City's negligence, Plaintiff would not have been subjected to Mr. Smith's sexual harassment and discrimination and would not have suffered injury.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT IX
## GROSS NEGLIGENCE
*Against Individual Defendant Gary Smith*

79. Every paragraph not falling under this count is incorporated herein by reference

80. The individual Defendant acted with a wanton and reckless disregard for Plaintiff's civil rights by engaging in sex-based discrimination against Plaintiff.

81. The individual Defendant's conduct demonstrated an indifference to Plaintiff's civil rights to the point where he acted as if such rights did not exist.

82. the individual Defendant intentionally inflicted injuries on plaintiff through wrongful conduct, and unwanted harmful physical contact.

83. As a direct and proximate result of the aforesaid grossly negligent conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer severe mental anguish as well as physical pain and suffering, in addition to financial and economic injury.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

## COUNT X
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*Against Individual Defendant Gary Smith*

84. Every paragraph not falling under this count is incorporated herein by reference

85. The individual Defendant's conduct was intentional, reckless, and in deliberate disregard of a high degree of probability that emotional distress would result to Plaintiff.

86. The aforesaid conduct by Defendant Smith was extreme and outrageous and beyond the bounds of decency in society.

87. Defendant's conduct was malicious, willful, and intentional.

88. As a result of the aforesaid conduct and actions, Plaintiff has suffered and will continue to suffer, severe and extreme emotional distress.

WHEREFORE, the Plaintiff demands compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages or injunctive relief, in addition to costs, expenses, and attorneys' fees.

### JURY DEMAND

Plaintiff demands a jury trial as to all claims so triable.

Respectfully submitted,

HANSEL LAW, P.C.

*/s/ Cary Hansel*

Cary J. Hansel (Bar No. 14722)
cary@hansellaw.com
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SHANAE WATKINS**, <br> 1044 Radnor Avenue <br> Baltimore, Maryland 21212 <br><br> *Plaintiff*, <br><br> v. <br><br> **MAYOR AND CITY COUNCIL OF BALTIMORE CITY** <br> Serve: James L. Shea, Esq. <br> *City Solicitor* <br> City Hall - Room 250 <br> 100 North Holliday Street <br> Baltimore, Maryland 21202 <br><br> and, <br><br> **BALTIMORE CITY COMMUNITY ACTION PARTNERSHIP** <br> Serve: Angela Whitaker <br> *Director* <br> 1731 East Chase Street <br> Baltimore, MD 21213 <br><br> and, <br><br> **GARY SMITH** <br> *Individually and in his official capacity as an employee of the Baltimore City Community Action Partnership* <br> 1731 East Chase Street <br> Baltimore, MD 21213 <br><br> *Defendants*. | Case No.: _____ <br><br> ***JURY TRIAL DEMANDED*** |

## LINE REGARDING SUMMONSES

SIR/MADAM CLERK:

Kindly accept the attached Complaint for Filing, issue summonses thereon, and return to undersigned counsel for service by private process.

        Respectfully submitted,

        HANSEL LAW, PC

        /s/ Cary Hansel

        Cary J. Hansel (Bar No. 14722)
        cary@hansellaw.com
        2514 N. Charles Street
        Baltimore, Maryland
        Phone: 301-461-1040
        Facsimile: 443-451-8606

        *Counsel for Plaintiff*